804 So.2d 813 (2001)
Marylin R. DUMAS, Leroy Dumas, Russell Dumas & Gloria Dumas, Plaintiffs-Respondents,
v.
STATE of Louisiana, Through The DEPARTMENT OF CULTURE, RECREATION & TOURISM and The Department of Transportation & Development, Defendants-Applicants.
No. 35,492-CW.
Court of Appeal of Louisiana, Second Circuit.
December 19, 2001.
Rehearing Denied January 17, 2002.
*814 Richard A. Bailly, Baton Rouge, Victoria Reed Murry, Assistant Attorney Generals, Counsel for Applicants.
Dimos, Brown, Erskine & Burkett by Donald R. Brown, Alexandria, Counsel for Respondents.
Before NORRIS, BROWN and CARAWAY, JJ.
BROWN, J.
This is a wrongful death case against the State of Louisiana as a result of an accident allegedly due to a defective road. The trial court struck the state's amended answer asserting medical malpractice as the cause of the death and seeking an apportionment of fault and damages against the medical provider. We granted the state's writ application to review the effect of the 1996 amendments concerning comparative fault on the jurisprudential rule that the original tortfeasor is liable for subsequent malpractice. We now affirm the trial court's ruling.

Facts
George Dumas, age 61, was injured on April 22, 1996, on a camping trip at Chemin-a-Haut State Park near Bastrop, Louisiana. He was thrown from a bicycle after allegedly hitting a pothole on a park road. Dumas, who received a large laceration to his right forehead and scalp, was taken to Morehouse General Hospital where he received medical treatment for his wounds. Dumas died six to seven hours later.
Dumas's wife and three adult children filed a petition for damages against the State of Louisiana through the Department of Culture, Recreation & Tourism and the Department of Transportation and Development alleging that: the state maintained and controlled the park roads; the pothole created an unreasonable risk of injury; the state had actual and constructive knowledge of the pothole; and, the state failed to repair or warn of the defect. The state answered the petition denying responsibility and alleged the fault of decedent, George Dumas.
The particular issue now before the court arose when the state filed an amended answer to its petition alleging that the cause of Dumas's death was in fact medical malpractice on the part of the anesthesiologist at Morehouse General. Dumas allegedly died after he aspirated the contents of his stomach following a routine surgical procedure to repair the scalp laceration. The state "affirmatively plead[ed]" the "fault of third parties in the medical treatment *815 of George Dumas ... as the cause of the death ... for which the state is not jointly liable." It further asserted as an affirmative defense "the applicability of Louisiana's law of comparative fault, particularly the law of joint and divisible liability as enunciated in Louisiana Civil Code Articles 2323 A & B, and 2324 B."
Plaintiffs responded to the amended answer by filing a motion to strike on grounds that the allegations added therein are immaterial, irrelevant and insufficient. Specifically, plaintiffs argued that the state was attempting to introduce factual allegations and evidence of subsequent medical malpractice in violation of the jurisprudential rules that, as a matter of policy, the original tortfeasor is fully liable for subsequent malpractice as set forth in Weber v. Charity Hospital of Louisiana at New Orleans, 475 So.2d 1047 (La.1985); and Lambert v. U.S. F. & G. Co., 629 So.2d 328 (La.1993).
The trial court granted the motion to strike stating that the amendments to Civil Code Articles 2323 and 2324 did not legislatively overrule Weber and its progeny. We granted the state's writ application to review the matter.

Discussion
In 1977 the legislature amended article 2323 to impose a comparative fault regime. Thereafter in 1985, the supreme court decided Weber, supra. The jurisprudential rule handed down in Weber is clear. When a tort victim takes reasonable steps to obtain medical treatment, the original tortfeasor may be liable for subsequent medical malpractice.
In Weber, an automobile accident victim sustained further injury when she contracted hepatitis as a result of a tainted blood transfusion during surgical treatment for her injuries. The victim sued the driver of the automobile for the damages caused by the blood transfusion as well as the accident. The supreme court stated that an original tortfeasor may be held liable not only for the injuries he directly causes, but also for the tort victim's additional suffering caused by inappropriate medical treatment. Under a duty risk analysis, "[t]he original tortfeasor's responsibility may extend to the risk involved in the human fallibility of physicians, surgeons, nurses, and hospital staff which is inherent to the necessity of seeking medical treatment." Id. at 1050.
The court went on to hold that the driver's liability was solidary with the hospital and the company that supplied the tainted blood, even though the liability of the hospital and blood supply company was imposed only for those damages resulting from the transfusion and not the automobile accident. It is the coextensiveness of the obligations for the same debt, and not the source of liability, which determines the solidarity of the obligation. Weber, supra at 1051, citing Narcise v. Illinois Central Gulf Railroad, 427 So.2d 1192 (La. 1983).
After the 1987 statutory amendment to Civil Code Article 2324(B), limiting solidary liability to a 50% cap, the supreme court decided Lambert, supra. The court in Lambert held that the 1987 statutory amendment to Civil Code Article 2324 reducing solidarity among solidary obligors only to the extent necessary for the injured party to recover 50% of his recoverable damages did not change the rule of Weber that the original tortfeasor may be liable not only for injuries he directly causes, but for additional injuries due to bad medical treatment. The court rejected the original tortfeasor's argument that the 1987 amendment changed his liability such that he was solidarily liable only to the extent necessary to insure that the victim received 50% of his recoverable damages, and therefore, it was necessary *816 for the trial court to apportion fault among the solidary tortfeasors. The court stated that the original tortfeasor was liable for 100% of the victim's damages because he was the legal cause of 100% of the victim's harm and the amendment to article 2324 did not change this result. The imposition of solidary liability between the original tortfeasor and the subsequently treating health care providers permits the original tortfeasor to seek contribution from the health care providers. In that action, the apportionment of fault is necessary. Lambert, supra at 329.
La. Civil Code Articles 2323(A) & (B) and 2324(B) were amended in 1996, effective April 16, 1996, just six days prior to the accident at issue in this case. The state alleges that the amendments overrule the holdings of Weber and Lambert. Art. 2323. Comparative Fault
(A) In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a non-party, and regardless of the person's insolvency, ability to pay, immunity by statute, including by not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
(B) The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability. (Emphasis added).
Art. 2324. Liability as solidary or joint and divisible obligation
(B) If liability is not solidary pursuant to Paragraph A (intentional or willful act), then liability for damages caused by two or more persons shall be joint and divisible obligations. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.
The state contends that the amendments to these two articles have eliminated solidary liability in negligence cases (but not intentional tort cases) and done away with the action for contribution, even though La. Civil Code Articles 1804 and 1805 provide for contribution among solidary obligations arising from offenses and quasioffenses by making the solidary co-obligors a third party defendants. Indeed, the language of article 2323 appears to require a determination of the percentage of fault of all joint tortfeasors in any action for damages and article 2324 states that the liability of joint tortfeasors shall not be solidary.[1]
*817 Weber was decided after the enactment of comparative fault. Lambert was decided after the 1987 amendments reducing solidary liability.
We find that the 1996 amendments to articles 2323 and 2324 do not change the rule of Weber and Lambert. When the duty breached by a tortfeasor includes the risk that a plaintiff's injuries might be worsened by subsequent medical treatment, the tortfeasor is liable for 100% of the damages. This rule is based upon legal cause. When a tort victim takes reasonable steps to secure medical treatment, the original tortfeasor may also be liable for subsequent medical malpractice. That a tort victim will seek medical care when injured and thus, be subject to further risk and damages is foreseeable and easily associated with the original injury. This is not a divisible obligation.[2] There is no additional percentage of fault by the medical care provider to quantify.

Conclusion
For these reasons, we affirm the ruling of the trial court granting the motion to strike filed by plaintiffs. Our ruling does not prohibit the state from filing a third-party demand for contribution from the *818 appropriate parties as authorized by Louisiana Civil Code Articles 1804 and 1805.
AFFIRMED.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
I respectfully dissent to the majority's ruling.
The first observation I would make about this case is that separate injuries occurred to Mr. Dumas on two different occasions. This permits apportionment of damages. Damages for which the State may be completely responsible occurred before the alleged act of medical malpractice. The damages, beginning with the act of medical malpractice, can be attributable to two tortfeasors.
The Weber and Lambert rulings are couched in the language of solidary obligations between joint tortfeasors. Weber says that two tortfeasors may be solidarily liable for those damages which a plaintiff may compel either to pay, even though other elements of damages (such as the pain and suffering of the bicycle accident) may be recoverable only against one of the tortfeasors. Lambert's statement that the original tortfeasor's "liability for 100% of the victim's damages results because he is the legal cause of 100% of the victim's harm" did not mean that the negligent medical care provider in Lambert was not also a legal cause of that portion of the victim's damages that arose upon the act of malpractice. Likewise, the majority would not say, under the facts of this controversy, that the negligence of the medical provider who was responsible for Mr. Dumas' anesthesia may not be a legal cause of his death.
Since Weber and Lambert are based upon principles of solidarity between joint tortfeasors, they are no longer authority for our decision, because of the revision to Articles 2323 and 2324. These articles address the allocation of fault between joint tortfeasors, or, if that term may be questioned in this context involving separate occurrences, between "all persons causing or contributing to the injury." The majority proceeds with a Weber/Lambert analysis when all has changed.
Second, amendments to the Code of Civil Procedure, which also have a bearing on this situation, suggest that the trial court cannot put on blinders and ignore a claim alleging fault of the medical provider. The trial court, in response to a peremptory exception or on its own motion, should conduct the process set forth under La. C.C.P. arts. 641 and 642 to determine whether joinder of the co-tortfeasor (or joint obligor) is feasible. Under the revision to La. C.C.P. art. 1812(C), the trial court, upon request of a party, is now mandated to submit special written questions to the jury concerning whether the fault of a non-party was a legal cause of the damages.
Finally, I do not think we can create a special analysis for Weber-type tortfeasors in the face of the new law without ignoring the law. In the language of La. C.C. art. 1788, defining the new relationship of the State and the medical care giver, these joint tortfeasors may owe one obligation for the decedent's death, "but neither is bound for the whole." How a fact finder allocates fault among tortfeasors for wrongful death is a mixed question of law and fact and should not be usurped by judges with preliminary legal pronouncements divorced from consideration of the facts. Moreover, as an initial inquiry, legal cause or scope of duty is also a mixed question of law and fact which the jury decides, not the trial court via a motion to strike. While, as a general rule, the State's duty can extend to guard against the risk of medical complications from the original injury, under the facts of cases *819 like these, the jury should decide whether the particular risk created by the act of malpractice was included within the scope of the State's duty. I would reverse the trial court's ruling.

APPLICATION FOR REHEARING
Before NORRIS, C.J., BROWN, WILLIAMS, CARAWAY, AND PEATROSS, JJ.
Rehearing denied.
CARAWAY, J., would grant rehearing.
NOTES
[1] The state cites Steptoe v. Lallie Kemp Hospital, 93-1359 (La.03/21/94), 634 So.2d 331, for the proposition that it should be allowed to present evidence of the damages caused by medical malpractice. In that case, Justice Watson, in dicta, stated that the medical malpractice defendants could have been entitled to a proportionate reduction of the damages rather than being held solidarily liable had they pleaded and proved that the causative fault for the damages was the original automobile accident defendants. These facts are, of course, precisely the reverse of the instant situation. The duty-risk analysis in that case is not analogous to the instant case in which the original tortfeasor is claiming that the damage was caused by the subsequent medical malpractice.

The state also cites Wallmuth v. Rapides Parish School Board, 01-0042 (La.App. 3rd Cir.05/16/01), 802 So.2d 28, writ granted, 01-1779, 01-1780 (La.10/12/01), 799 So.2d 488, for the proposition that Weber and Lambert's holding that the original tortfeasor is liable for 100% of the recoverable damages because he was the legal cause of 100% of the injuries, is no longer the law under Civil Code Article 2324. The court stated that the nonintentional tortfeasor is liable only for his own share of the fault, and accordingly reduced the defendant's liability to 70% of the plaintiff's damages. The state also cites language from two other cases, Keith v. U.S. F. & G. Co., 96-2075 (La.05/09/97), 694 So.2d 180, wherein the court stated that the 1996 amendments to articles 2323 and 2324 were procedural and that it is "the task of the factfinder to allocate shares of negligence," and Hall v. Zen-Noh Grain Corporation, 00-1376 (La.App. 5th Cir.12/13/00), 777 So.2d 523, wherein the Fifth Circuit stated that the 1996 amendment to article 2324 eliminated solidary liability for intentional and willful acts.
[2] Recently, the First Circuit considered this question in Knabel v. Lewis, 00-1464 (La.App. 1st Cir.09/28/01), ___ So.2d ___, 2001 WL 1144126 (not yet released for publication). Ms. Knabel was injured when Lewis backed his 18 wheeler truck into a car in which she was a passenger. At trial, Lewis's insurer, Canal Insurance Co. alleged that Ms. Knabel's health care providers were negligent when giving Ms. Knabel injections in her hip and that their negligence increased Ms. Knabel's damages. Canal Insurance objected to a charge instructing the jury that "defendants are liable for injuries they directly caused to the plaintiff, but are also liable for the plaintiff's additional damages caused by inappropriate treatment by a doctor, nurse or hospital staff member who treats injuries directly caused by the defendants."

The Knabel court distinguished the actions of "joint tortfeasors," which requires the quantification of each tortfeasor's fault, from the facts in Knabel. Citing Weber, supra, the First Circuit held that Canal Insurance was 100% liable for Ms. Knabel's injuries because the duty of an original tortfeasor not to injure a victim includes the risk that inappropriate treatment by medical professionals may result in worsening of the injury caused by the tortfeasor. There is no additional percentage of fault by another to quantify since the original tortfeasor is 100% at fault. The court concluded that it was not error to charge the jury concerning Canal Insurance's liability for any negligent acts by Ms. Knabel's health care providers in their treatment of Ms. Knabel for injuries she sustained as a result of this accident.