828 So.2d 530 (2002)
Marylin R. Dumas, Leroy DUMAS, Russell Dumas & Gloria Dumas
v.
STATE of Louisiana, through the DEPARTMENT OF CULTURE, RECREATION & TOURISM and the Department of Transportation & Development.
No. 2002-CC-0563.
Supreme Court of Louisiana.
October 15, 2002.
*531 Richard Ieyoub, Attorney General, Richard A. Bailly, Baton Rouge, Counsel for Applicant.
Donald R. Brown, Alexandria, Counsel for Respondent.
Troy E. Bain, Shreveport, Counsel for Louisiana Trial Lawyers Association (Amicus Curiae).
KIMBALL, Justice.
This is a wrongful death and survival action brought to recover damages sustained when the victim was injured in a bicycle accident and subsequently died while being treated for those injuries in a hospital. We granted certiorari in this case to consider whether the 1996 amendments to La. C.C. arts. 2323 and 2324(B) allow the initial tortfeasor to present, as an affirmative defense, evidence relating to alleged malpractice on the part of the health care providers. For the reasons that follow, we conclude that the 1996 amendments allow the initial tortfeasor to present such evidence. Furthermore, we conclude that the amendments effected a change in Louisiana's tort policies such that our pre-1996 opinions holding that an original tortfeasor may be held liable for the victim's injuries caused by negligent medical treatment do not serve to bar the initial tortfeasor from presenting evidence relating to the alleged malpractice of the treating health care providers.

Facts and Procedural History
On April 22, 1996, George Dumas was riding a bicycle in Chemin-a-Haut State Park near Bastrop, Louisiana, when he allegedly hit a pothole in the park road. As a result of the alleged accident, Mr. Dumas was thrown from his bicycle and sustained a large laceration to his right forehead and scalp. Mr. Dumas was transported to Morehouse General Hospital where he received medical treatment for his wounds. Several hours after arriving at the hospital, Mr. Dumas died.
On April 21, 1997, Mr. Dumas's wife and three adult children filed a wrongful death and survival action against the State of Louisiana through its Department of Culture, Recreation and Tourism and its Department of Transportation and Development (collectively referred to as the "State"), alleging the pothole presented an unreasonable risk of harm, the State had both constructive and actual knowledge of the defect, and the State failed to cure the defect in the road or warn of its presence. Plaintiffs further alleged this failure was the cause of Mr. Dumas's death. The State filed an answer denying liability and alleging fault on the part of Mr. Dumas. Subsequently, on May 15, 2001, the State filed an amended answer alleging as an affirmative defense that the death of Mr. Dumas resulted solely from the medical negligence of physicians and staff at Morehouse General Hospital, particularly in the administration and maintenance of anesthesia services following a routine surgical procedure to repair a scalp laceration. The amended answer asserted that the negligent medical treatment caused Mr.
*532 Dumas to aspirate his stomach contents, which ultimately lead to cardiac arrest. The amended answer further stated:

17 (d).
The State affirmatively pleads, in defense to the claims asserted, the fault of third parties in the medical treatment of George Dumas, as described above, as the cause of the death of plaintiffs' decedent, for which the State is not jointly liable.

17 (e).
The State further pleads, in affirmative defense, the applicability of Louisiana's law of comparative fault, particularly the law of joint and divisible liability as enunciated in Louisiana Civil Code Articles 2323 A & B, and 2324 B.
In response to the State's amended answer, plaintiffs filed a motion to strike on grounds that the allegations added therein were immaterial, irrelevant, and insufficient. Specifically, plaintiffs argued that the amended answer sought to introduce factual allegations and evidence of medical malpractice in violation of the jurisprudential rules set forth in Weber v. Charity Hosp. of La., 475 So.2d 1047 (La.1985) and Lambert v. United States Fidelity & Guar. Co., 629 So.2d 328 (La.1993), that, as a matter of policy, the original tortfeasor is the legal cause of any subsequent injury which might result from inadequate medical treatment.
In opposition, the State argued the 1996 legislative changes to La. C.C. arts. 2323 and 2324 abolished solidary liability in cases involving negligent acts and, with it, abolished the action for contribution among joint tortfeasors. The State contended the analysis underlying the Weber and Lambert cases was no longer applicable in light of the 1996 amendments.
After a hearing, the trial court granted the motion to strike, reasoning that the analysis set forth in Weber and Lambert is still viable in the context of subsequent medical malpractice after the 1996 amendments to La. C.C. arts. 2323 and 2324. The State applied to the second circuit court of appeal for a writ of certiorari to review the trial court's judgment. The intermediate court granted supervisory review and affirmed the trial court's judgment granting plaintiffs' motion to strike. Dumas v. State ex rel. Dept. of Culture, Recreation & Tourism, 35,492 (La.App. 2 Cir.12/19/01), 804 So.2d 813. The majority of the court of appeal concluded that the 1996 amendments to Articles 2323 and 2324 did not change the rule of Weber and Lambert because the rule of those cases is based upon legal cause such that, as a matter of policy, when the duty breached by a tortfeasor includes the risk that a victim's injuries might be worsened by subsequent medical treatment, the initial tortfeasor is liable for 100% of the damages. The court further determined that because the original tortfeasor is liable for 100% of the damages, there is no additional percentage of fault by the medical provider to quantify. Finally, the court of appeal noted that its ruling did not prohibit the State from filing a third-party demand for contribution pursuant to La. C.C. arts. 1804 and 1805.
We granted the State's application for certiorari to consider whether the lower courts properly granted plaintiffs' motion to strike the State's amended answer on the basis of the Weber/Lambert rationale in light of the 1996 amendments to La. C.C. arts. 2323 and 2324(B). Dumas v. State ex rel. Dept. of Culture, Recreation & Tourism, 02-0563 (La.5/31/02), 816 So.2d 860.

Discussion
Prior to 1980, Louisiana courts applied a judicially-created rule based on *533 common-law precedents under which a plaintiff's contributory negligence barred any recovery in a negligence action. Rozell v. Louisiana Animal Breeders Co-op., Inc., 496 So.2d 275, 279 (La.1986); Bell v. Jet Wheel Blast, 462 So.2d 166, 169 (La. 1985). The first Louisiana case that clearly adopted the doctrine of contributory negligence was Fleytas v. Pontchartrain Railroad Co., 18 La. 339 (1841), which was decided at a time when there was no organized body of civilian doctrine on the issue of comparative fault. Bell, 462 So.2d at 169. Effective August 1, 1980, the legislature amended La. C.C. art. 2323 to eliminate the doctrine of contributory negligence and to provide a procedure by which a plaintiff's negligence would operate only to reduce his recovery in proportion to his fault. Murray v. Ramada Inns, Inc., 521 So.2d 1123, 1132 (La.1988); Bell, 462 So.2d at 170. As amended by Act No. 431 of 1979, La. C.C. art. 2323, entitled "Computation of damages," provided:
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
The amendment, the effect of which was to prevent courts from applying any rule more damaging to plaintiff's case than comparative negligence, Bell, 462 So.2d at 170, was beneficial to plaintiffs in that it increased the probability that they would be compensated, at least in part, for their injuries.
Act No. 431 of 1979 also revised La. C.C. art. 2324 to reaffirm the principle of solidary liability among joint tortfeasors, a principle that had been a part of Louisiana's civil tradition for more than 150 years. See Touchard v. Williams, 617 So.2d 885 (La.1993). As amended by this Act, La. C.C. art. 2324, entitled "Liability for assisting or encouraging wrongful act," provided:
He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.
Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido; provided, however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution.
One of the underlying policies of solidary liability, as well as tort law as a whole, is victim compensation. Touchard, 617 So.2d at 889. The imposition of the principle of solidarity among joint tortfeasors "`espouse[s] a theory that it is better to allocate damages to the injurers, even in greater portions than their respective degrees of fault, than have victims suffer a reduced recovery.'" Id. at 890 (quoting M. Kevin Queenan, Civil Code Article 2324: A Broken Path to Limited Solidary Liability, 49 La. L.Rev. 1351, 1356 (1989)). That is, the modern justification for solidary liability is founded on the belief that the innocent plaintiff should have the opportunity to obtain full compensation from any person whose fault was an indispensable factor in producing the harm. Touchard, *534 617 So.2d at 890. Thus, the primary effect of solidary liability is that any tortfeasor may be made to pay the judgment in full for other defendants who are insolvent, unknown, or absent. Id.
In 1987, the legislature confronted the problem of compelling solvent defendants who were not 100% at fault to pay for 100% of plaintiffs' damages by enacting compromise legislation that attempted to balance the competing interests of judgment creditors and judgment debtors.[1]Id. By Act No. 373 of 1987, the legislature amended La. C.C. art. 2324, newly entitled "Liability as solidary or joint and divisible obligation," to provide:
A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
B. If liability is not solidary pursuant to Paragraph A, or as otherwise provided by law, then liability for damages caused by two or more persons shall be solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages; however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of fault has been attributed. Under the provisions of this Article, all parties shall enjoy their respective rights of indemnity and contribution. Except as provided in Paragraph A of this Article, or as otherwise provided by law, and hereinabove, the liability for damages caused by two or more persons shall be a joint, divisible obligation, and a joint tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, or immunity by statute or otherwise.
This amendment balanced the risks of insolvent, incapable of paying, unknown, and absent tortfeasors among plaintiffs and known, solvent defendants. Touchard, 617 So.2d at 892.
In a case arising prior to the 1987 amendment, Weber v. Charity Hosp. of La. at New Orleans, 475 So.2d 1047 (La.1985), this court was presented with the issue of whether a compromise with and release of an initial tortfeasor discharged a hospital and a blood supplier that gave the victim unwholesome blood during treatment for injuries she sustained in the original accident from any obligation relating to the blood transfusion. To answer this question, we were required to determine whether the original tortfeasor was solidarily liable for the damages resulting from the transfusion since the release of one solidary obligor discharged other solidary obligors. We concluded that an initial tortfeasor may be liable for the injuries he directly caused to the tort victim as well as for the victim's additional suffering caused by inappropriate treatment by a health care provider who treated the original injuries and characterized this inquiry as one of legal causation which should be addressed under a duty-risk analysis. We then determined that the initial tortfeasor's negligence was a cause in fact of the injuries the victim received as a result of inappropriate medical care, and that the initial tortfeasor's duty to refrain from *535 negligently harming others encompassed the risk that the victim's injuries might be worsened by the treatment for those injuries. Consequently, we found that, as a matter of policy, the initial tortfeasor's negligence was the legal cause of the injuries arising from the subsequent medical treatment and the initial tortfeasor could therefore be held liable for any damages resulting from that treatment. Finally, we concluded that the initial tortfeasor's liability for any damages arising out of the medical treatment was solidary with any liability found to exist on the part of the hospital and the blood supplier.
After the 1987 amendment of Article 2324, an issue arose concerning the effect of the amendment on this court's holding in Weber. In Lambert v. United States Fidelity & Guar. Co., 629 So.2d 328 (La. 1993), a per curiam opinion, we determined that the amendment reducing solidarity among solidary obligors to only the extent necessary for the tort victim to recover fifty percent of his recoverable damages did not change the principle announced in Weber that the initial tortfeasor could be held liable for any damages arising out of medical treatment necessitated by the original accident. We stated that the initial tortfeasor's liability was based on the fact that he was the legal cause of 100% of the victim's harm as well as on the imposition of a solidary obligation between joint tortfeasors. We determined that the 1987 amendment to La. C.C. art. 2324 did not change the Weber principle, in part because an apportionment of fault between the original tortfeasor and the subsequently treating health care provider could result in the victim receiving less than the full amount of the judgment. We went on to note, however, that even under the Weber rationale that remained valid despite the 1987 amendment, the original tortfeasor would not ultimately bear the cost of the entire tort judgment because he had the right to seek contribution from the health care provider. We explained this result relieved the victim of having to prove which of the two tortfeasors caused what injuries and, instead, properly placed this burden on the original tortfeasor.
Several years after this court's opinion in Lambert, the legislature again amended La. C.C. arts. 2323 and 2324(B), this time to abolish solidary liability among non-intentional tortfeasors and to place Louisiana in a pure comparative fault system. Amended by Act 3 of the 1st Ex.Sess. of 1996, La. C.C. art. 2323, entitled "Comparative fault," now provides:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly *536 of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.
In addition to Article 2323, Act 3 also amended La. C.C. art. 2324 to provide:
A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.
C. Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.
The Act was effective April 16, 1996.[2]
In this case, the State contends Article 2323(A) and (B) and Article 2324(B), as amended in 1996, abolished solidary liability in civil cases involving negligent acts and therefore this court's analysis in Weber and Lambert is no longer applicable to prevent it from arguing the fault of a subsequent health care provider as an affirmative defense at trial. The State further supports its analysis by pointing out that there is no longer an action for contribution among joint tortfeasors, a possibility it contends underlies the Lambert decision, because those joint tortfeasors are no longer solidarily liable with any other person. The State also argues that the 1996 amendment to La. C.C. art. 2324(B) not only eliminated solidarity between non-intentional tortfeasors, but also eliminated the solidarity "otherwise provided by law," including that law enunciated in Weber and Lambert. Based on these arguments, the State concludes a legal basis for this court's decisions in Weber and Lambert no longer exists. Plaintiffs, on the other hand, contend the result urged by the State is not required by the amended statutes because the amendments do not clearly provide that they apply to medical malpractice claims and because such a result would be contrary to the legislative policies found in the Medical Malpractice Act. According to plaintiffs, allowing tortfeasors to question the medical care rendered to their victims will necessarily cause a large increase in the number of medical malpractice claims, which in turn will increase medical malpractice insurance premiums and will have a direct negative effect on the legislative goals underlying the Medical Malpractice Act.
When a law is clear and unambiguous and the application of the law does not lead to absurd consequences, the law must be applied as written without any further interpretation of the intent of the legislature. La. C.C. art. 9. Accordingly, the starting point for the interpretation of any statute is the language of the statute itself. Riddle v. Bickford, 00-2408, p. 9-10 (La.5/15/01), 785 So.2d 795, 802.
*537 We find the language of Articles 2323 and 2324(B), as amended by Act 3, is clear, unambiguous, and does not lead to absurd consequences. Article 2323 provides that "[i]n any action for damages..., the degree of percentage of fault of all persons causing or contributing to the injury, death or loss shall be determined, regardless of whether the person is a party to the action or a nonparty.... The [foregoing] provisions ... shall apply to any claim ... asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability." (Emphasis added.) Thus, this article clearly requires that the fault of every person responsible for a plaintiff's injuries be compared, whether or not they are parties, regardless of the legal theory of liability asserted against each person.
Likewise, the language of Article 2324(B) is equally clear. It provides that in non-intentional cases, liability for damages caused by two or more persons shall be a joint and divisible obligation.[3] Each joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of that other person. This provision abolishes solidarity among non-intentional tortfeasors,[4] and makes each non-intentional tortfeasor liable only for his own share of the fault, which must be quantified pursuant to Article 2323.
In this case, the State alleges that a portion of the damages sought by plaintiffs was caused by medical malpractice on the part of the health care providers treating Mr. Dumas for the injuries he sustained in the bicycle accident. Pursuant to Article 2323, the fault of both the State and the allegedly negligent health care providers should be determined notwithstanding the fact that the health care providers are nonparties. Under Article 2324(B), if a jury determines that both the State and the health care providers negligently injured Mr. Dumas and plaintiffs, then the liability between them will be a joint and divisible obligation, they will not be solidarily liable, and each joint tortfeasor will be liable only for his portion of fault. The comparative fault article, La. C.C. art. 2323, makes no exceptions for liability based on medical malpractice; on the contrary, it clearly applies to any claim asserted under any theory of liability, regardless of the basis of liability. There is no conflict between either Article 2323 or Article 2324(B) and the Medical Malpractice Act that could be fairly classified as "absurd." Accordingly, we find the clear language of Articles 2323 and 2324(B), applied as written, leads to the inescapable conclusion that the State in this case must be allowed to put on evidence related to the health care provider's alleged fault as part of its defense. While we recognize that these articles, which substantially impede the ability of an injured party to obtain full recovery of his damages, are in derogation of established rights and are to be strictly construed, Touchard, 617 So.2d at 892, we simply cannot construe their unmistakably clear language in a contrary *538 manner without overstepping our role as jurists.
Plaintiffs' reliance on this court's prior holdings in Weber and Lambert to justify the opposite result is misplaced. The principle of Weber and Lambert can be characterized as one of policy formulated by this court in terms of legal cause under the then-prevailing rule of solidarity and in the absence of a contrary legislative expression. "Regardless if stated in terms of proximate cause, legal cause, or duty, the scope of the duty inquiry is ultimately a question of policy." Roberts v. Benoit, 605 So.2d 1032, 1052 (1991) (on rehearing). This inquiry "is a policy question in purest form." Id. As explained earlier in this opinion, the policy behind solidarity is one of victim compensation. By imposing solidarity among joint tortfeasors, Louisiana subscribed to a theory that it was more desirable to force a tortfeasor to pay damages in greater proportion than the degree of fault allocated to him than to have an innocent victim suffer less than full recovery. Our holdings in Weber and Lambert effectuated this policy. In those cases, we did not find that the subsequently negligent health care provider did not cause some portion of plaintiff's injuries or that those providers were not liable; rather, the determination that, as a matter of policy, the initial tortfeasor was the legal cause of 100% of plaintiff's harm allowed plaintiff to seek the entirety of his damages caused by the subsequent tortfeasor from either the initial or the subsequent tortfeasor. Thereafter, because of the imposition of solidarity between the initial and subsequent tortfeasors, the initial tortfeasor who paid the entire judgment could seek contribution from the health care provider.[5] This result furthered Louisiana's policy of full victim compensation by placing the burden of recovery from the subsequent tortfeasor on the initial tortfeasor. In fact, we noted in Lambert that a contrary resolution would be undesirable on policy grounds because it could result in the victim receiving less than the full amount of the judgment.
With the 1996 amendments to Articles 2323 and 2324(B), however, the legislature has effected a total shift in tort policy. Prior to the enactment of the amendments, the policy behind Louisiana's tort law was ensuring that innocent victims received full compensation for their injuries. Now, however, Louisiana's policy is that each tortfeasor pays only for that portion of the damage he has caused and the tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of that other person. With the advent of this new policy, the right of contribution among solidary tortfeasors also disappeared since it is no longer necessary in light of the abolishment of solidarity. The legislature has struck a new balance in favor of known, present and solvent tortfeasors instead of the previous priority that fully compensated injured victims. While one may question the advisability of this shift in policy, we are bound to follow it. See Soloco v. Dupree, 97-1256 (La.1/21/98), 707 So.2d 12, 17 ("It is not the prerogative of the judiciary to disregard public policy decisions underlying legislation or to reweigh balances of interests and policy considerations already struck by the legislature.").
The policies upon which Weber and Lambert were based have simply been changed by the legislature. Because it is error for a court to allow "its own policy determination to override the policy determination made by the legislature," Id., we *539 cannot allow the policy-based rule of Weber and Lambert to prevent the State from presenting a defense to which it is clearly entitled under the amendments to La. C.C. arts. 2323 and 2324(B). The factfinder in the instant case is required to determine the percentage of fault of all persons causing injury to plaintiffs. If the factfinder concludes that plaintiffs' damages were caused by more than one person, then each joint tortfeasor is only liable for his degree of fault and cannot be held solidarily liable with another tortfeasor for damages attributable to that other tortfeasor's fault. The State in this case is therefore entitled to present, as an affirmative defense, evidence relating to the fault of another person it believes caused injury to plaintiffs. Consequently, we find that plaintiffs' motion to strike the State's amended answer on the basis that it is immaterial, irrelevant, and insufficient should be denied.
Accordingly, the judgments of the lower courts granting plaintiffs' motion to strike are reversed, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.
REVERSED and REMANDED.
CALOGERO, C.J., dissents and assigns reasons.
CALOGERO, Chief Justice, dissents and assigns reasons.
I disagree that the legislature by the 1996 amendments to La. Civ.Code arts. 2323 and 2324(B) overruled the reasoning of this state's courts that an original tortfeasor may be held liable for the victim's injuries caused by subsequent, negligent medical treatment. Such a policy was recognized in Louisiana as early as 1962 in Hudgens v. Mayeaux, 143 So.2d 606 (La. App. 3rd Cir.1962), and by this court in 1985 in Weber v. Charity Hospital of Louisiana, 475 So.2d 1047 (La.1985). In Weber, we reasoned that the duty of the negligent driver to refrain from causing injury to another encompassed the risk that the tort victim's injuries might be worsened by subsequent, negligent medical treatment for those injuries. 475 So.2d at 1050. We iterated that principle more recently in Lambert v. U.S. Fidelity & Guaranty Co., 629 So.2d 328 (La.1993), in which we reasoned that "in Weber-like cases, the original tortfeasor's liability for 100% of the tort victim's injuries is based on more than the imposition of a solidary obligation between joint tortfeasors; his liability for 100% of the victim's damages results because he is the legal cause of 100% of the victim's harm." 629 So.2d at 329. In Weber, we explained that "[i]t is the coextensiveness of the obligations for the same debt, and not the source of liability, which determines the solidarity of the obligation." 475 So.2d at 1051.
The two courts of appeal that have considered whether the 1996 amendments have overruled Weber and Lambert have both answered in the negative. Dumas v. State, Dep't of Culture, Recreation & Tourism, 35,492 (La.App. 2 Cir. 12/19/01), 804 So.2d 813; Knabel v. Lewis, 00-1464 (La.App. 1 Cir. 9/28/01), 809 So.2d 314. As the court of appeal below explained:
When the duty breached by a tortfeasor includes the risk that a plaintiff's injuries might be worsened by subsequent medical treatment, the tortfeasor is liable for 100% of the damages. The rule is based upon legal cause. When a tort victim takes reasonable steps to secure medical treatment, the original tortfeasor may also be liable for subsequent medical malpractice. That a tort victim will seek medical care when injured and thus, be subject to further risk and damages, is foreseeable and easily associated with the original injury. This is not a divisible obligation. There *540 is no additional percentage of fault by the medical care provider to quantify.
Dumas, 35,492, pp. 6-7, 804 So.2d at 817.
La. Civ.Code art. 2324(B) states that a "joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person ...." Applying that language to Weber-type cases, it is my view that the original tortfeasor's fault includes damages that may arise from subsequent, negligent medical treatment of the original injury, because he is the legal cause of the victim's injuries, and thus there is no fault to apportion to the negligent medical provider in a suit against the original tortfeasor. Accordingly, I do not believe that the legislature, which more likely intended to preclude original tortfeasors from seeking contribution from subsequent negligent medical providers, thereby protecting medical care providers from liability, instead overruled the Weber Lambert rule to place innocent Louisiana victims at risk of not being able to be completely compensated for their tort injuries.
NOTES
[1] The original bill initiating this legislation would have wholly eliminated solidary liability among joint tortfeasors, except for those cases involving willful or intentional acts. See Touchard, 617 So.2d at 890.
[2] There is no question that the provisions of Act 3 of the 1st Ex.Sess. of 1996 are applicable in the case at bar as the accident occurred on April 22, 1996, six days after the effective date of the Act.
[3] La. C.C. art. 1788 provides:

When different obligors owe together just one performance to one obligee, but neither is bound for the whole, the obligation is joint for the obligors.
La. C.C. art. 1789 provides:
When a joint obligation is divisible, each joint obligor is bound to perform, and each joint obligee is entitled to receive, only his portion.
[4] La. C.C. art. 1796 provides:

Solidarity of obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties' intent or from the law.
[5] Prior to the 1996 amendments, La. C.C. art. 2324(B) specifically reserved the rights of indemnity and contribution among co-tortfeasors.