|, MAX N. TOBIAS JR, Judge.
This case arises from injuries sustained by the plaintiff, Azmi Eslaih, when, while standing on the shoulder of the interstate highway where his taxicab had stalled late one night, he was pinned between his taxicab and a second family owned vehicle when his cab was struck by a vehicle driven by defendant, Marc Williams. Mr. Es-laih alleges that at least two New Orleans police cruisers passed him and his stalled vehicle on the night in question, but did not stop to offer assistance. He and his wife, Melanie Eslaih, sued the City of New Orleans in negligence, asserting that a police officer has an affirmative duty to protect the public from a known dangerous traffic situation and that the police officers’ failure to do so was the proximate cause of his injuries.
FACTS
On 3 November 1995, around midnight, the plaintiff, Azmi Eslaih, a cab driver for Nighthawk Cab Company, was traveling on Interstate 10 West in New Orleans, approaching or at the Westbank Expressway/South Claiborne Avenue exit, when his vehicle stalled and could not be restarted. Mr. Eslaih was forced to Lpull his vehicle to the only emergency lane along that stretch of raised interstate, which is located along the left-hand lane of the interstate, by pushing the cab across several lanes of travel and stopping the car with its front facing the westbound traffic. Mr. Eslaih testified that he put on the hazard fights and tried repeatedly to start the engine, but that he was unsuccessful. As he had no cell phone or radio by which he could contact anyone for assistance, he waited with his cab for someone to stop and offer him assistance. After approximately forty-five or fifty minutes he was picked up by another cab driver and driven home. While at home, Mr. Eslaih called AAA (an automobile club) of which he was a member, and ate a snack before deciding to return to his taxicab to remove some personal items and meet the tow truck dispatched by AAA. He reportedly arrived at the scene at approximately 2:00 a.m. to wait for the tow truck. He parked the van just beyond the stalled vehicle in the emergency lane, with the van facing in the opposite direction, so that the trunk of the cab and the back of the van were adjacent. Mr. Eslaih stood between the cab and the van, transferring various personal items from the cab to the van.
At approximately 3:00 a.m, Mr. Eslaih was still waiting for the tow truck when an automobile driven by defendant, Marc D. Williams, was proceeding in a westerly direction on Interstate 10, approaching the stalled taxicab. Mr. Williams struck the stalled taxicab, pinning Mr. Eslaih between it and the van. Mr. Eslaih suffered two broken legs and underwent reconstructive surgeries. He was | ¡¡hospitalized repeatedly over several months and required a number of medical procedures to repair his injured legs.
Mr. Eslaih testified that he witnessed one New Orleans Police Department marked cruiser pass him and his cab sometime between the time he moved his cab to the emergency lane and the time he was picked up by another cab. He further testified that he later saw another marked cruiser pass his cab after he revisited the scene while he was moving personal items from his cab to the van. Neither patrol car stopped to offer him assistance, and it is this alleged failure on the part of the police department that gives rise to the cause of action of the plaintiffs in negligence against the City of New Orleans.
*58 At the trial on the merits, the only live witnesses presented were Mr. Eslaih, Officer James Edward Seaberry, Jr., and Sergeant Orman J. Walters, Jr. of the New Orleans Police Department. Officer Sea-berry was one of the officers who reported to the accident scene after Mr. Eslaih and his vehicle were hit. He confirmed that both of Mr. Eslaih’s vehicles were fully in the emergency lane and not encroaching on any lane of travel. He further testified that he was unaware of what the police department’s policy regarding assisting stranded motorists was in 1995, but testified that if an officer had offered Mr. Eslaih assistance, policy would have dictated that he park his cruiser behind the stranded vehicle with all of his lights on, and that procedure would have been to secure the scene and warn oncoming motorists of the stalled vehicle. He testified that the New Orleans Police Department had patrolling jurisdiction for the area surrounding that stretch of | interstate, but indicated that it was unlikely that a patrol car would have been traveling that stretch of interstate at that time of night.
Sergeant Orman J. Walters, Jr. was called by the City to testify regarding the rules and regulations of the police department as of the time of the subject accident. Sergeant Walters testified that, upon passing Mr. Eslaih and his stalled vehicle prior to the accident, a prudent police officer, unless he had been dispatched on an emergency mission, would have stopped and made an investigation, given that the car was parked facing the wrong direction. He testified that Code 2 calls, which indicate life-threatening situations, do not necessitate initiation of the blue light or siren on a police cruiser. Further, he testified that, even if a passing police officer was en route to a life-threatening emergency, he or she could have radioed another patrol car to investigate the stalled vehicle.
Deposition testimony of Chief Michael A. Helmstetter of the Crescent City Connection Police Department was introduced into evidence. His testimony established that the site of the accident was beyond the patrolling jurisdiction of his department. He further confirmed that no entry in the dispatch logs of the Crescent City Connection Police Department existed that indicated that any member of his force either responded to or had notice of the plaintiffs accident. To the best of his knowledge, the site of the accident was within the patrolling jurisdiction of the New Orleans Police Department.
IfiCaptain Brian Etland of the Louisiana State Police testified in his deposition that similarly, Louisiana State Troopers do not patrol the area immediately surrounding the site of the accident and that, to the best of his knowledge, that area is under the patrolling jurisdiction of the New Orleans Police Department.
Prior to the trial on the merits, Marc D. Williams and his insurance carrier, Allstate Insurance Company, settled with the plaintiffs; AAA, who was also named as a defendant, was dismissed on summary judgment. The plaintiffs voluntarily dismissed the State of Louisiana prior to trial. The only remaining defendant at trial was the City of New Orleans. The trial court, after conducting a bench trial on all issues, found the City of New Orleans liable for 30% of Mr. Eslaih’s damages, which were determined as follows: $250,000.00 in general damages; $70,768.33 in medical special damages; and $36,000.00 in past lost wages. The judgment rendered by the Court further ordered that “all other defendants be held hable for the remaining 70% of fault.”
Both the plaintiff and the City of New Orleans appeal the judgment of the trial court. In the first assignment of error, Mr. Eslaih asserts that the trial court *59 erred in assigning any fault to “all other defendants” on the grounds that the City of New Orleans failed to raise an affirmative defense of comparative fault in its Answer or subsequent pleadings. Second, he asserts that the Court erred in awarding only $250,000.00 in general damages given the seriousness of the injuries sustained. Third, Mr. Eslaih asserts that the trial court erred in suggesting that he can only recover 30% and not 50% of the judgment from the City of New ^Orleans, given that the accident in question occurred prior to the 1996 amendment revisions to Louisiana law regarding joint and solidary liability.
The City of New Orleans lodged its appeal asserting eight assignments of error.[1] In its first assignment of error, the City asserts that the trial court erred in finding it liable to the plaintiff. It its second assignment of error, the City argues that the trial court erred in failing to find the plaintiff contributorily negligent in causing his injuries. Assignments of error five through nine are assignments of error grounded in factual findings by the trial court relating to the plaintiffs liability and veracity and will be treated as sub-parts of assignment of error number two. In its final assignment of error, the City argues that the quantum in this case as determined by the trial court is excessive.
DISCUSSION
Defendant’s Assignment of Error Number One.
The City of New Orleans asserts in its initial assignment of error that there was insufficient evidence to find the City liable for the injuries sustained by the plaintiffs as a result of the automobile accident. In its judgment, the trial court notes that in Louisiana, a police officer has an affirmative duty to see that the public is not subjected to an unreasonable risk of harm when he or she becomes aware of a dangerous traffic situation. Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173; Edwards v. Daugherty, 97-1542 (La.App. 3 Cir. 3/10/99), 729 So.2d 1112. Thus, a law enforcement officer has breached his duty to the public 17once he becomes aware of a dangerous traffic situation and does nothing to protect the public or to secure the accident scene.
In the present case, Mr. Eslaih testified that he put the hazard lights on as soon as he moved his cab across the interstate to the emergency lane, and maintained in his testimony at trial that his blinkers remained on for at least two hours more, after he had arrived at the accident scene in his wife’s van. He further testified that he also engaged the emergency hazard lights on the van as well while he was waiting for the tow truck dispatched by AAA to arrive. Although the City calls into question whether it is credible that the hazard lights remained on for the entire two- to three-hour period in question, no evidence is presented to contradict Mr. Eslaih’s account.[2] A trial court’s function is to judge the credibility of the witnesses before it; this court will *60 not disturb its ruling with regard to the veracity of a witness’ testimony. Although no evidence has been put forth by the plaintiffs that any police officer or representative of the New Orleans Police Department was ever made aware of a dangerous traffic situation, it is reasonable to find that the engagement of the hazard lights on both vehicles and that the presence of a vehicle in the emergency lane pointed in the wrong direction would be sufficient notice to any passing law enforcement officer to trigger the duty to protect the public from a known traffic hazard, even if the presence of Mr. Eslaih was not known. If, as has |sbeen argued by the City, no opportunity existed to stop by the police officer(s) in question due to some sort of emergency situation or exigent circumstance, it is not unreasonable to expect that the unknown police officer could have radioed another cruiser to respond to what did eventually become a very dangerous traffic situation.
Although no evidence is presented to corroborate Mr. Eslaih’s testimony regarding the two police cruisers that he claims passed him that night, we find no evidence to suggest that he was mistaken or untruthful.. Given the trial court’s traditional function as evaluator of credibility of the witnesses before it, we will not disturb its findings regarding the truthfulness or accuracy of Mr. Eslaih’s testimony. That is, the trial court was neither manifestly erroneous nor clearly wrong in its conclusion.
Defendant’s Assignments of Error Number Two and Five through Nine.
The City contends that the trial court erred in failing to assign any fault to Mr. Eslaih for his alleged negligence as a cause of his injuries. Specifically, the City contends that Mr. Eslaih was negligent in the following particulars:
-making repeated attempts to restart a stalled vehicle over an extended period of time, without any warning to traffic other than emergency lights;[3]
-failing to direct traffic away from the stalled vehicle in a manner beyond relying upon the vehicle’s emergency flashers; [4]
-failing to call a tow truck until after “significant delay” and failing to use the stalled vehicle’s floor mats to warn oncoming motorists;[5] and
| a-failing to protect the public from the hazard created by the presence of the stalled vehicle immediately beside a high speed lane of travel and interfering with the safe flow of traffic and creating a public hazard.[6]
The City cites La. R.S. 32:141 and 32:296, and argues that the prohibition against leaving an unattended vehicle on the shoulder of any state highway was breached by Mr. Eslaih and that his abandonment of the stalled cab created an unreasonable risk of harm. However, La. R.S. 32:141 specifically provides that its prohibitions do not apply to “the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position.” [Emphasis supplied.] Further, La. R.S. 32:296 provides that its prohibition against parking a vehicle upon the highway shoulder operates against a driver “unless such stopping, parking, or standing is made necessary by an emergency.” As *61 such, it is clear that, given the facts of this case, Mr. Eslaih was not negligent per se in his stopping of the stalled cab on the shoulder of the interstate. In fact, it is clear from the facts of this case that Mr. Eslaih had absolutely no other' option, as his vehicle stalled in a lane of traffic and as there was no other available emergency lane or area removed from the interstate.
The City’s argument that Mr. Eslaih was negligent in failing to direct traffic around his stalled vehicle or to remove the vehicle from the roadway in a timely manner is similarly without merit. The City cites Ly v. State of Louisiana (La.App. 5 Cir.1993), 633 So.2d 197, as support for this contention. In Ly, the plaintiffs were driving along Interstate 10 when their vehicle stalled in the eastbound center lane of travel during the early morning hours. Instead of |1()removing the vehicle from the lanes of travel or attempting to warn oncoming traffic of the stalled vehicle, the driver of the vehicle put on the hazard lights and attempted to repeatedly start the vehicle without success. Ms. Ly’s husband stood next to the vehicle and did not attempt to flag anyone down. Their car was struck by an oncoming vehicle and the driver was killed, with her husband suffering serious injuries that eventually led to his death. The Fifth Circuit Court of Appeal found both plaintiffs negligent in their failure to remove the vehicle from the roadway or make known the dangerous situation to other drivers. Id. The present case is obviously distinguishable in that the plaintiffs stalled vehicle was removed from the interstate and did not obstruct any lanes of travel. Because the Court in Ly predicated the plaintiffs’ negligence on the fact that the stalled vehicle was still in the lane of traffic, we find the ruling in Ly inapplicable to this case.
Although the City argues that Mr. Eslaih should have been more proactive in warning oncoming traffic of the danger posed by the presence of his vehicle in the emergency lane, it appears that Mr. Eslaih took appropriate action in removing his vehicle from the roadway and putting on the emergency blinkers. Although he did not actively attempt to direct other drivers away from his stalled vehicle, it would conceivably have put him at even greater peril to do so. Further, the assertion that he did not call a tow truck in a more timely manner is specious; Mr. Eslaih was without any method of communicating with any towing companies until after he arrived at home, at which time the evidence shows he did call AAA to have a tow truck dispatched.
If Mr. Eslaih was negligent in any way, it was in failing to call the police himself to report the stalled vehicle so that a law enforcement officer could secure the scene prior to his car being towed. However, we find that the trial court did not In commit manifest error in failing to assign fault to Mr. Eslaih. His actions following the stalling of his cab did not create an unreasonable risk of harm.
Plaintiffs’ Assignment of Error Number One.
In their initial assignment of error, the plaintiffs assert that the trial court erred in assessing any degree of fault to any defendant or tortfeasor other than the City of New Orleans on the grounds that the City failed to raise the liability of any other party, other than Mr. Eslaih himself, as an affirmative defense and, as a consequence, the plaintiffs’ claim that no evidence was presented regarding the fault of any other party. Further, the plaintiffs maintain that they had no notice that the liability of any other parties was at issue at trial and that inclusion in its judgment of the comparative fault of other parties amounted to unfair surprise to them.
*62 While it is true that the City of New Orleans failed to raise as an affirmative defense in its answer the comparative fault of any party other than Mr. Eslaih, La. C.C.P. art. 1154 provides:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading....
Although the plaintiffs are correct in asserting that the negligence of any party other than Mr. Eslaih was not raised in the answer of the City, there was sufficient evidence presented at trial for the trial court to consider the negligence of parties other than Mr. Eslaih and the defendant. The record reflects that no objection was made at trial regarding any evidence introduced reflecting the negligence of other parties. In fact, La C.C. art. 2324, in effect as of the time of l^the accident, suggests that it is incumbent upon a trial court to determine the percentage of fault' for each tortfeasor, regardless of whether that party is present at trial or even known. Touchard v. Williams (La.4/12/93), 617 So.2d 885. While it is clear that AAA was dismissed from this matter on summary judgment, the remaining former defendants were dismissed voluntarily from this litigation by the plaintiffs. Their negligence or lack of fault was never determined by the trial court. We conclude that the trial court committed error in failing to consider the fault of Mr. Williams. We need not, however, quantify with a specific percentage Mr. Williams’ fault other than to find that he is at least significantly at fault for the accident; we do, however, find that he is at least 50% at fault for the accident. Nevertheless, as discussed below, because the City will be liable for 50% of the final judgment as a solidary obligor under pre-revision La. C.C. art. 2324, any error committed by the trial court regarding the apportionment of fault to “all other defendants” is essentially harmless and will not change the result.
Plaintiffs' Assignment of Error Number Three.
The plaintiffs argue that the trial court erred in its judgment by “suggesting” that the City of New Orleans could only be held liable for 30% of the damages, and not for up to 50% in accordance with joint and several liability as it existed at the time of the accident in question.
1S Prior to 1996, Louisiana law provided that joint obligors were solidarity liable for up to 50% of a judgment rendered in favor of a plaintiff. Specifically, La. C.C. art. 2324, in effect on or about 3 November 1995, provided:
A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
B. If liability is not solidary pursuant to Paragraph A, or as otherwise provided by law, then liability for damages caused by two or more persons shall be solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages; however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of fault has been attributed. Under the provisions of this article, all parties shall enjoy their respective rights of indemnity and contribution. Except as provided in Paragraph A of this Article, or as *63 otherwise provided by law, and hereinabove, the liability for damages caused by two or more persons shall be a joint, divisible obligation, and a joint tortfeasor shall not be solidarily hable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person’s insolvency, ability to pay, degree of fault, or immunity by statute or otherwise.
The language of article 2324 at that time “balanced the risks of insolvent, incapable of paying, unknown, and absent tortfeasors among plaintiffs and the known, solvent defendants.” Dumas v. State of Louisiana, 2002-0563 (La.10/15/02), 828 So.2d 530, citing, Touchard v. Williams, supra. As discussed infra, there is nothing to suggest that the trial court was precluded from considering the negligence or fault of parties not at trial in this matter. Further, pursuant to article 2324 and its interpretation by the Louisiana Supreme Court, it is clear that the City of New Orleans, as a tortfeasor whose negligence was apportioned at 30% and whose degree of fault is equal to or greater than the degree of fault attributed to |uMr. Eslaih, is liable for 50% of the award made to Mr. Eslaih, and the judgment of the trial court must be amended to reflect the City of New Orleans’ status as a quasi-solidary obligor as provided by law as of the date of the accident.
Plaintiffs’ Assignment of Error Number Three and Defendants’ Assignment of Error Number Two.
Both the plaintiffs and the City of New Orleans argue that the general damages award is incorrect. As one might expect, the plaintiffs argue that $250,000.00 in general damages is insufficient to compensate Mr. Eslaih for the serious injuries he sustained to his legs as a result of the accident in question and that a more adequate figure would be $500,000.00. The plaintiffs also argue that because Mr. Eslaih was treated at Charity Hospital in New Orleans, he is entitled to have taken into account what he would have spent at a more expensive, private hospital and that his general damage award should be augmented to reflect not what his medical expenses were, but what they could have been. We find no statutory or jurisprudential support for this argument, and the plaintiffs cite none.
The City asserts that the general damages are too high, given the fact that Mr. Eslaih was not in the hospital for several months, as has been suggested by the plaintiffs’ counsel, but rather that he underwent several procedures that did not require extended stays in the hospital.
We find that the amount of general damages awarded by the trial court to be neither unreasonably high nor unreasonably low. As a consequence, it is our ruling that the trial court did not abuse its vast discretion in the amount of damages awarded.
[^Conclusion
We find that the trial court did not commit manifest error in determining that the City of New Orleans was negligent and in attributing 30% of the total fault to the City after the trial on the merits. We further find that the trial court did not err in failing to find Mr. Eslaih negligent under the facts of this case. Although the judgment rendered by the Court should have specifically set forth the amount of fault attributable to each potential tortfea-sor, the failure to do so does not change the effect of the final judgment and, as such, is harmless error. Due to the City’s status as a solidary obligor under tort law in effect as of the date of the accident, the *64 City is liable for 50% of the total judgment and the judgment is amended to reflect the City’s status as an obligor for that 50%. Finally, we find that the amount of damages awarded by the trial court to be reasonable and not an abuse of discretion.

AMENDED; AS AMENDED, AFFIRMED.

GORBATY, J., dissents with reasons.

. The City actually has assignments of error numbered one through nine, but there is no assignment of error number four, so there are in actuality only eight assignments of error.

. The City of New Orleans raises as its Assignment of Error number seven that the trial court erred in finding that it was likely that the hazard lights were engaged on the stalled vehicle as long as three hours past the time they were engaged given the nature of the car trouble. However, no evidence in the record exists to suggest the true mechanical problem encountered by Mr. Eslaih and, absent any evidence to suggest that the hazard lights could not have been functioning at the time of the accident, we defer to the trial court in its assessment of the plaintiff's veracity.

. Defendant’s Assignment of Error number 5.

. Defendant's Assignment of Error number 6.

. Defendant’s Assignment of Error number 8.

. Defendant’s Assignment of Error number 9.