# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-176


MARKUS CHAISSON

VERSUS

KEVIN K. JOLIVETTER, ET AL.



**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2017-5872 J
HONORABLE ROYALE L COLBERT, JR., DISTRICT JUDGE

**********

**D. KENT SAVOIE**
**JUDGE**

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and D. Kent Savoie, Judges.




**AFFIRMED.**

**Kay A. Theunissen**
**Mahtook & LaFleur**
**P.O. Box 3605**
**Lafayette, Louisiana 70502**
**(337) 266-2189**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Lafayette City-Parish Consolidated Government**
    **Kevin K. Jolivette**

**J. Clemille Simon**
**Attorney at Law**
**P. O. Box 52242**
**Lafayette, Louisiana 70505**
**(337) 232-2000**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Markus Chaisson**

**SAVOIE, Judge.**

After a bench trial, the trial court found in favor of Plaintiff Markus Chaisson and against Defendants Kevin Jolivette [1] and Lafayette City-Parish Consolidated Government (LCG), awarding total damages in the amount of $40,073.00. Defendants now appeal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This matter arises out of an automobile accident that occurred on October 17, 2016, in Lafayette, Louisiana. Defendant Kevin Jolivette, in the course and scope of his employment with LCG as a city bus driver, was driving along Hammond Road on his bus route. Plaintiff Markus Chaisson was driving in the opposite direction on Hammond Road. As the vehicles passed each other, their side mirrors collided.

Markus Chaisson filed suit against Kevin Jolivette and LCG, claiming that Mr. Jolivette crossed the center dividing line of the road and entered his lane. Mr. Chaisson alleged that he was forced to take an evasive maneuver in order to avoid a head on collision, causing him to strike the mailbox located at 901 Hammond Drive.

The matter proceeded to trial on November 21, 2021. The trial court found, "[I]n consideration of the testimony adduced at trial, the evidence and lack of evidence presented, the Court finds that the balance tipped in favor of the plaintiff and renders judgment in favor of the Plaintiff." The trial court awarded $7,073.00 in past medical expenses and $33,000.00 in general damages for a total damage award of $40,073.00. Defendants now appeal.

---

[1] We note that Defendant Kevin Jolivette's name is misspelled in the caption of the case.

## ASSIGNMENTS OF ERROR

1. The trial court erred in finding the defendants solely liable for the accident, given the narrow width of the roadway, video evidence, and the judge's apparent sole reliance on James Lejeune's purported lack of credibility in finding defendants' liable.

2. The trial court erred in allowing plaintiff's treating chiropractors, Dr. Quintin Brisco and Dr. David Barczyk, to provide accident reconstruction testimony, as neither doctor rendered an expert report nor was qualified/admitted as an accident reconstruction expert.

3. The trial court erred in excluding Defendant Exhibit 7 – Google Earth images accurately representing the location of the accident.

4. The trial court erred by awarding plaintiff $33,000.00 in general damages, as this award is excessive given plaintiff's soft tissue injuries, short and conservative medical treatment, and apparent medical treatment for a shoulder not injured in this accident.

## LAW AND DISCUSSION

I. *Standard of Review*

The standard of appellate review of factual determinations is manifest error. *Stobart v. State, Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). When reviewing factual determinations for manifest error, the issue is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was reasonable. *Id.* If the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as trier of fact, it would have weighed the evidence differently. *Id.* Additionally, where factual findings are based on determinations regarding the credibility of witnesses, great deference is afforded to those factual findings under the manifest error standard. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Factual findings based on the fact finder's decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous. *Id.* This rule applies equally to the fact finder's evaluation of expert testimony. *Lasyone v. Kansas City S. R.R.*, 00-2628 (La. 4/3/01), 786 So.2d 682.

*Hebert v. State Farm Fire and Casualty Company*, 21-10, pp. 2-3 (La.App. 3 Cir. 8/4/21), 325 So.3d 1090, 1093, *writ denied*, 21-1358 (La. 11/17/21), 327 So.3d 992.

2

## II. Assignment of Error Number One – Sole Liability

Defendants first complain that the trial court erred in finding Defendant solely liable for the accident. Defendants further complain about the trial court's reliance on James Lejeune's lack of credibility in finding the Defendant's solely liable. James Lejeune was the LCG investigator assigned to investigate this accident. He arrived at the scene within thirty minutes after the accident.

The law states that vehicles must be driven on the right side of the roadway. *See* La.R.S. 32:71. "Drivers of vehicles proceeding in opposite directions shall pass each other to the right, and upon roadways having width for not more than one line of traffic in each direction each driver shall give to the other at least one-half of the main traveled portion of the roadway as nearly as possible." La.R.S. 32:72. The trial court found that both Mr. Chaisson and Mr. Jolivette had a duty to give each other as much room as possible while traversing the street.

The trial court heard testimony from Officer Gustavo Sanchez who was employed by the Lafayette Police Department at the time of the accident and investigated this accident. Officer Sanchez testified that the accident occurred on a narrow roadway with no center stripe or any markings at all. Based on his investigation, from what he was told on scene, and the damage to the vehicle, Officer Sanchez determined that Mr. Chaisson was travelling in his designated lane of travel, and the bus was driving left of center. Specifically, Officer Sanchez determined that Mr. Chaisson could not have positioned his truck further to the right without driving off the roadway and into a ditch. As a result of the accident, Officer Sanchez issued a citation to the driver of the city bus for careless operation.

The court heard the testimony of Mr. Jolivette. He admitted that he could have positioned his bus further to the right than he did without going off of the

roadway when passing Mr. Chaisson's vehicle. Mr. Chaisson testified that, in order to avoid a head on collision with the city bus, he slammed on his brakes and turned to the right; however, because there was a ditch to his right, he couldn't move over far enough to miss the bus. He also hit a mailbox after being impacted by the bus.

Regarding Mr. Lejeune's testimony, the trial court stated:

[Mr. Lejeune] testified that he arrived on the scene within thirty minutes of the accident. He then stated that he approached the Plaintiff who did not cooperate with him. He further stated that he took a statement from a "white Caucasian female" passenger on the bus. The LCG investigator testified that the female told him that the bus was not to the left of the lane, but [it] was indeed as far right as possible. When asked the name of the female he could not produce the name, despite the fact that all of the passengers on the bus wrote a statement. The Court further noted that there was only one Caucasian female on the bus at the time of the accident.

The LCG investigator further wrote in his initial report that the bus came to a stop at the corner of Antelope Court and Hammond. When queried where he got that information he stated he was told the same by the passengers. He further stated that he learned the information was false – however, he did not correct his report nor reevaluate his opinion as to causation.

Finally, the LCG investigator stated that the videos which were placed into evidence "clearly" showed the bus to the right of the center line and not to the left as stated by the Plaintiff. The Court found his statements to be outrageously false especially considering that he could not point to any location on any of the films that showed the position of the bus. Furthermore, when counsel pointed out that all of the cameras were pointed toward the inside of the bus he refused to admit the simple mistake.

Ultimately, the trial court found the testimony of James Lejeune to be "highly un-credible." Defendants argue that the trial court's sole reliance on James Lejeune's testimony constitutes reversible error. Defendants come to the conclusion that the trial court solely relied on the investigator's testimony based on a single sentence found in the written reasons. The trial court states: "Indeed,

4

prior to the false statements by the LCG investigator, this matter was akin to a football game with two minutes left and LCG was ahead by three points with the ball." Reading the written reasons in their totality, it is clear the trial court did not solely rely on James Lejeune's testimony when determining liability in this matter.

Based on the testimony of the witnesses and the evidence in the record, the trial court made the following findings of fact:

- Hammond Road is an undivided road somewhat narrow in scope.
- Defendant bus driver admitted his mirror struck the mirror of the Plaintiff's vehicle.
- Defendant bus driver stated that it was possible that he was to the left of the center line.
- Plaintiff stated that at all times he was as far right as possible without going into the ditch.
- The bus driver apologized to the Plaintiff's passenger after the accident.
- The video showed by the City of Lafayette taken from the city bus appeared to show the passenger side truck tires touching the driveway of 901 Hammond at time stamp 16:27.33.
- The bus driver testified that the bus had "play" in the steering.
- Defendant bus driver testified that he could have moved further to the right and avoided the impact.
- None of the passengers on the bus gave a statement regarding the placement of the bus or the 2011 GMC on the road.

The trial court ultimately determined that "in consideration of the testimony adduced at trial, the evidence and lack of evidence presented, the Court finds that the balance tipped in favor of the Plaintiff and renders judgment in favor of the Plaintiff." We find the record evidence reasonably supports the trial court's conclusion and factual findings. As such, we find the trial court did not commit manifest error.

### III. Assignment of Error Number Two – Treating Chiropractors

In the next assignment of error, Defendants allege that the trial court erred in allowing Plaintiff's two treating chiropractors, Dr. David Barczyk and Dr. Quentin

Brisco, to provide accident reconstruction testimony. Defendants assert that the doctors were allowed to testify "regarding the mechanism of Chaisson's injury in relation to the movement of his vehicle and the effect of his seatbelt."

Mr. Chaisson counters that Defendants have mischaracterized the doctors' testimony. Mr. Chaisson maintains that the testimony Drs. Barczyk and Brisco gave regarding the mechanism was necessary to prove causation.

Defendants specifically complain about the following testimony from Dr. Brisco:

Q    So, the question again, Dr. Brisco, was, could the mechanism of injury as described to you by Mr. Chaisson, cause the injuries you diagnosed?

A    Yes.

Q    Okay. Is it your opinion, more probably than not, that Mr. Chaisson's injuries were caused by the bus accident on October 17, 2016?

A    Yes.

Dr. Barczyk testified:

Q    What was your understanding of the mechanism of injury that was described to you?

A    Well, to be clear, the patient doesn't give the mechanism of injury. The patient describes the history of what occurred, and it's up to the clinician, or the doctor to determine the mechanism of injury. So, as he described that, and then he described his symptoms of back pain, left shoulder pain, neck pain, and headaches, and after digging into it, as to what collided and what happened, I determined that the injury mechanism was aggressive braking, and this avoidance behavior; swerving in a hurry to avoid greater danger.

Q    What is your understanding of what took place inside the truck when this aggressive braking maneuver took place?

A    Well, aggressive braking, you can – hard braking is known to create – you lose fifteen miles per hour, per second in hard

6

braking, so in one second, you can – it's fifteen miles per hour changing speed, right, so –

. . . .

A   So, with that, there is going to be a deceleration of the vehicle, quicky, to the extent that the body is kind of decelerated, or thrusted forward. Dr. Brisco mentioned, essentially, the law of inertia, which is basic physics that we have in chiropractic school, and before chiropractic school, is we're traveling at a certain speed. If we hit the brakes, our body wants to keep going that speed until something stops it, and usually what stops it is the seatbelt, right? And, the seatbelt would stop the shoulder torso, but the lumbar spine is free to flex and extend. The pelvis is anchored, but the lumbar spine is not. The seatbelt goes over the sternum, and mid-clavicle, so your abdomen is fully able to flex and extend. And then, obviously, there's nothing to stop the forward head movement, because the seatbelt doesn't do that. But, all this notwithstanding that that issue, in addition to this aggressive swerve, you had rotation and lateral flexion, because as you swerve, your body is going to move to an extent, with rotation and lateral flexion, in addition to the rapid flexion from the braking. So, you have this kind of complex injury mechanism that flexion, rotation, shear, and it can lead to injuries of the soft tissues.

"Generally, the trial court is granted broad discretion on its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion." *Segura v. Comeaux*, 17-285, p. 4 (La.App. 3 Cir. 11/2/17), 279 So.3d 418, 421, *writ denied*, 17-2027 (La. 2/2/18), 235 So.3d 1109. We find that this assignment of error lacks merit. Neither Dr. Barczyz nor Dr. Brisco testified as to how the accident occurred, the location of the accident, the road conditions, etc. Both doctors explained how the accident affected Mr. Chaisson and caused his injuries. Said testimony is well within their area of expertise. The trial court did not abuse its discretion in allowing this testimony.

IV.   *Assignment of Error Number Three – Defense Exhibit 7*

Defendants next complain that the trial court excluded nine Google Earth images identified as Defense Exhibit 7. The images represent the roadway on

which the accident occurred. In excluding the images, the trial court stated "[w]e don't know who took the picture [or] the date the picture was taken."

In *Walker v. S.G.B.C., LLC*, 19-506 (La.App. 3 Cir. 2/5/20), 290 So.3d 700, *writ denied*, 20-355 (La. 6/3/20), 296 So.3d 1070, a panel of this court ruled that Google Earth images may be properly authenticated using witness testimony at trial. Louisiana Code of Evidence article 901(B)(1) establishes that the testimony of a witness with knowledge is sufficient to authenticate an item introduced into evidence. In *Walker*, the Google Earth images were recognized and identified by each trial witness. The appellate court found that "the trial court had sufficient support for its finding that the Google Earth images were authentic." *Id*. at 705.

Based on our review of the applicable law and the record, we find that the trial court erred in finding Mr. Jolivette's testimony was insufficient to authenticate the Google Earth images. However, we note that Plaintiff introduced thirty-eight photographs, and Defendants introduced another thirty-six photographs. These photographs were taken on the day of the accident, showing the scene after the accident occurred. Defendants argue the proffered Google Earth images "represent the stretch of road on which this accident occurred, showing the narrow width of the road and the areas next to the road[.]" Many of the seventy-four photographs introduced into the record represent the same. These photographs were taken from street level and show the roadway from different viewpoints and angles, including the width of the road.

In *Wright v. Bennett*, 04-1944, p. 6 (La.App. 1 Cir. 9/28/05), 924 So.2d 178, 183, the first circuit explained:

> Louisiana Code of Evidence article 103(A) provides, in part, that "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." The proper

8

inquiry for determining whether a party was prejudiced by a trial court's alleged erroneous ruling on the admission or denial of evidence is whether the alleged error, when compared to the entire record, had a substantial effect on the outcome of the case. If the effect on the outcome of the case is not substantial, reversal is not warranted. LSA–C.E. art. 103(A).

Based on the foregoing, we find that the exclusion of the Google Earth images did not have a substantial effect on this case and amounted to harmless error. This assignment lacks merit.

V.      *Assignment of Error Number Four – Damages*

In this assignment, Defendants contend that the trial court erred by awarding Plaintiff $33,000.00 in general damages. In *Bouquet v. Wal-Mart Stores, Inc.*, 08-309, pp. 4-5 (La. 4/4/08), 979 So.2d 456, 459, the Louisiana Supreme Court explained:

> The standard of review applicable to a general damages award is the abuse of discretion standard. *Anderson* [*v. Welding Testing Laboratory, Inc.*], 304 So.2d [351,] 353 [(La.1974]; *Coco v. Winston Indus., Inc.,* 341 So.2d 332, 335 (La.1976). The trier of fact is afforded much discretion in assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand. *Duncan* [*v. Kansas City Southern Railway Co.*], 00–0066, p. 13 [La. 10/30/00,] 773 So.2d [670,] 682[.] "Vast discretion is accorded the trier of fact in fixing general damage awards."); *Anderson v. New Orleans Pub. Serv., Inc.,* 583 So.2d 829, 834 (La.1991). An appellate court may disturb a damages award only after an articulated analysis of the facts reveals an abuse of discretion. *Theriot v. Allstate Ins. Co.,* 625 So.2d 1337, 1340 (La.1993); *Youn v. Maritime Overseas Corp.,* 623 So.2d 1257, 1261 (La.1993), *cert. denied,* 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The role of an appellate court in reviewing a general damages award is not to decide what it considers to be an appropriate award but rather to review the exercise of discretion by the trier of fact. *Duncan,* 00–0066, p. 13, 773 So.2d at 682–83; *Youn,* 623 So.2d at 1260. To determine whether the fact finder has abused its discretion, the reviewing court looks first to the facts and circumstances of the particular case. *Theriot,* 625 So.2d at 1340; *Youn,* 623 So.2d at 1261.
>
> Only if a review of the facts reveals an abuse of discretion, is it appropriate for the appellate court to resort to a review of prior similar

awards. *Duncan,* 00–0066, p. 14, 773 So.2d at 683; *Cone v. Nat'l Emergency Serv. Inc.,* 99–0934, p. 8 (La.10/29/99), 747 So.2d 1085, 1089; *Youn,* 623 So.2d at 1261. In a review of the facts, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. *Theriot,* 625 So.2d at 1340; *Reck v. Stevens,* 373 So.2d 498, 501 (La.1979). Prior awards, however, are only a guide. *Theriot,* 625 So.2d at 1340.

"The issue of whether the amount of damages awarded conflicts with similar awards only arises once it has been ascertained that the [judge or] jury abused its discretion in determining the amount of damages awarded." *Miller v. LAMMICO*, 07-1352, p. 29 (La. 1/16/08), 973 So.2d 693, 711.

In the present case, Mr. Chaisson presented to the emergency room of Lafayette General Medical Center, complaining of lower back pain and shoulder pain. He was prescribed pain medication and told to follow up with his primary care physician, which he did. Mr. Chaisson's primary care physician, Dr. Thomas Voitier, noted that Mr. Chaisson complained of neck and left shoulder pain and that he would begin physical therapy or chiropractic care soon. Soon after, Mr. Chaisson attended an appointment with Dr. Brisco at the Bixenman-Richardson Chiropractic Clinic. Mr. Chaisson treated with Dr. Brisco from December 2016 through April 2017. He complained of pain in his neck, lower back, left trapezius, and headaches. In June 2017, Mr. Chaisson began seeing Dr. Barczyk with the Barczyk Chiropractic Group for similar complaints. He continued to treat with Dr. Barczyk until October 2017.

Mr. Chaisson testified that experienced pain until June 2018. He further testified that, after the accident, he was not able to stand for long periods of time or lift anything heavy. His injuries also affected the activities that he enjoyed prior to the accident such as working out, jogging, trail rides, and riding his four-wheeler.

The trial court determined:

In this matter the Plaintiff stated that he received injuries from the force of the seat belt causing him to come to an abrupt, violent stop. He stated that he injured his left shoulder, lower back, and neck as a result of the accident.

In support of his claims the Plaintiff produced his two main treating physicians, Dr. Quentin [Brisco] and Dr. David Barczyk, both of whom are local chiropractors. Dr. [Brisco] testified that he treated the Plaintiff for approximately eight months with little to no improvement. Dr. Barczyk stated he treated the Plaintiff for an additional four months and was able to bring his symptoms to an intermittent activity-driven status.

The City of Lafayette offered no rebuttal to the testimony of the doctors as to causation of the injuries. The City further did not make an argument for comparative fault. The Court further notes that the Plaintiff has not received treatment since 2018. The Court finds that the Plaintiff did not prove the need for future medical treatment.

After reviewing the evidence, we cannot say that the amount of general damages awarded by the trial court was an abuse of discretion. We find no merit in the argument that the general damages should be decreased.

### DECREE

The judgment of the trial court is affirmed. Costs of this appeal, totaling $6,980.84, are assessed to Defendants, Lafayette City-Parish Consolidated Government and Kevin Jolivette.

**AFFIRMED.**